|   |   |   |
|---|---|---|
| 1 |  |  |
| 2 |  |  |
| 3 |  |  |
| 4 |  |  |
| 5 |  |  |
| 6 |  |  |
| 7 |  |  |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| SELIM KIRBOGA,<br><br>                    Petitioner,<br><br>v.<br><br>Christopher LAROSE, Senior Warden, Otay Mesa Detention Center, *et al*.<br><br>                    Respondents. | Case No.: 25-cv-3706-GPC-DDL<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |
|---|---|

Petitioner Selim Kirboga ("Petitioner") is an ethnic Kurd and a citizen of Turkey. ECF No. 1 ("Pet.") ¶ 39. Throughout his life, Petitioner has experienced persecution in his home country because of his ethnicity. *Id*. ¶ 40. To escape this persecution, Petitioner sought asylum in the United States on June 2, 2024. *Id*. ¶ 41. He was able to enter the country and was released on a form of conditional parole. *Id*. On May 27, 2025, Respondents, at Petitioner's regularly scheduled Master Calendar Hearing, made a motion to dismiss his removal proceedings. *Id*. ¶ 45. The motion to dismiss was not granted during that hearing. *Id*. ¶ 45. Petitioner was detained as he exited the courtroom. *Id*. ¶ 46.

On December 20, 2025, Petitioner filed a petition for writ of habeas corpus, naming the Warden of the Otay Mesa Detention Center, Immigration and Customs Enforcement

and Removal Operations ("ICE")'s Field Office Director for the San Diego Field Office, and several other individual agency officials as respondents ("Respondents"). ECF No. 1. A response and traverse have been filed. ECF Nos. 5, 6. For the following reasons, the Court **GRANTS** the petition for a writ of habeas corpus. The Court VACATES the hearing set for January 9, 2025.

I. BACKGROUND

### A. Factual Background

Petitioner is an ethnic Kurd and a citizen of Turkey. Pet. ¶ 39. Because of his ethnicity, Petitioner has suffered persecution in Turkey his entire life. *Id*. ¶ 40. As a result, Petitioner left his home country to seek asylum in the United States. *Id*.

On June 2, 2024, Petitioner entered the United States. *Id*. ¶ 41. He was apprehended and detained for a period of time. *Id*. That day, Respondents commenced removal proceedings against him under 8 U.S.C. § 1229a. *Id*. ¶ 42. The government officer determined he was not a flight risk or a danger to the community, and Petitioner was released into the country on a conditional parole. *Id*. ¶ 41.

Since his release, Petitioner regularly complied with and appeared for scheduled ICE check-ins. *Id*. ¶ 43. In August 2024, Petitioner applied for asylum with EOIR. *Id*. ¶ 44. On January 20, 2025, the "Protecting the American People Against Invasion" executive order set out a series of interior immigration enforcement actions. *Id*. ¶ 48. Specifically, it instructed the Department of Homeland Security (DHS) Secretary to take all appropriate action to prioritize civil immigration enforcement procedures, including the use of mass detention. *Id*.

On May 27, 2025, Petitioner attended his regularly scheduled Master Calendar Hearing. *Id*. ¶ 45. Without notice, the government moved to dismiss Petitioner's removal proceedings. *Id*. Petitioner objected to the motion. *Id*. That day, the court did not dismiss

his case but, instead, gave Petitioner 10 days to respond to the motion to dismiss as required in the Immigration Court Practice Manual. *Id*.

Despite still being in 240 removal proceedings, Petitioner was detained by Respondents as he exited the courtroom. *Id*. ¶¶ 45-46. Petitioner did not receive any written notice that his parole was being terminated and was not given any particularized reason for the detention. *Id*. ¶ 46. The record of Petitioner's arrest states that he was being detained subject to Section 235 expedited removal proceedings. *Id*.

Petitioner was, then, transported to Otay Mesa Detention Center. *Id*.

### B. Procedural Background

On December 20, 2025, Petitioner filed his petition for writ of habeas corpus. ECF No. 1. On December 30, 2025, Respondents filed a return in opposition to the habeas petition. ECF No. 5 ("Ret."). Petitioner filed a reply on December 31, 2025. ECF No. 6.

Petitioner presents three claims under the Fifth Amendment Due Process clause. Specifically, "Petitioner was not advised by DHS that they sought to terminate his proceedings in order to place him in expedited removal, depriving him of the bundle of rights associated with his pending asylum application." Pet. ¶ 61 (First Cause of Action). Additionally, Petitioner argues that the January 2025 Designation, Office of the Secretary, Dept of Homeland Security, Designating Aliens for Expedited Removal, 15 Fed. Reg. 8139 ("2025 Designation")—which expanded the application of expedited removal—does not unmistakably apply to individuals, like Petitioner, who entered the United States prior to its effective date. *Id*. ¶¶ 72-73 (Third Cause of Action). Third, Petitioner contends that "Respondents have chosen to revoke Petitioner's release in an arbitrary manner and not based on a rational and individualized determination of whether he is a safety or flight risk." *Id*. ¶ 78 (Fourth Cause of Action).

Second, Petitioner has alleged two causes of action, asserting that Respondents violated the Administrative Procedure Act ("APA"). The APA causes of action allege that

Respondents have (1) unlawfully detained Petitioner categorically without individualized consideration of the facts and (2) violated 8 U.S.C. § 1225(b) because "expedited removal statute does not apply and may not be applied to individuals who were 'paroled' into the United States." *Id*. ¶¶ 72, 88, 91 (Second and Fifth Causes of Action).

The Petitioner asks the Court to (1) grant the instant petition for a writ of habeas corpus, (2) declare the Petitioner's detention violates the Due Process Clause, (3) declare application of the January 2025 Designation to Petitioner illegal, (4) issue an order prohibiting the Respondents from transferring Petitioner from the district without the Court's approval, and (5) award Petitioner attorney's fees and costs under the Equal Access to Justice Act and on any other basis justified under law.

## II. STATUTORY FRAMEWORK

### A. Standard & Expedited Removal Proceedings

An arriving noncitizen seeking admission into the United States at a U.S. Port of Entry is "processed either through expedited removal proceedings or through regular removal proceedings." *Innovation Law Lab v. McAleenan*, 924 F.3d 503, 507 (9th Cir. 2019). The regular removal procedure is also known as "section 240 proceedings." 240 proceedings involve an evidentiary hearing before an immigration judge and the ability for the individual to apply for asylum if he would be persecuted upon return to his home country. 8 U.S.C. § 1229a(a)(1), (b)(1); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Noncitizens seeking asylum are guaranteed due process under the 5th Amendment throughout this process. *Reno v. Flores*, 507 U.S. 292, 306 (1993).

The DHS Secretary has discretion to release a noncitizen on parole during this process. In one procedure, an arriving asylum seeker may be paroled "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). A separate procedure puts the immigrant in conditional parole. *Id*. § 1226(a). In either case, to release a noncitizen from custody requires a case-by-case determination, where the noncitizen

must "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).

The second, more streamlined process is expedited removal, governed by 8 U.S.C. § 1225. Under these proceedings, noncitizens can be ordered removed by an immigration officer "without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i). Because of the truncated procedure, expedited removal is limited to noncitizens meeting several requirements. First, a noncitizen is potentially eligible for expedited removal if he (1) sought to procure immigration status or citizenship via fraud or false representations or (2) "at the time of application for admission," failed to satisfy certain documentation requirements. *See* 8 U.S.C. § 1225(b)(1)(A)(i); 8 U.S.C. §§ 1182(a)(6)(C), 1182(a)(7). Second, expedited removal is further cabined to noncitizens who 1) are categorized as "arriving in the United States," or 2) have "not been admitted or paroled into the United States" and cannot affirmatively show they have been "physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." *Id.* § 1225(b)(1)(A)(i)–(iii). Within that second requirement, the Attorney General can designate the population of noncitizens subject to expedited removal. *Id.* § 1225(b)(1)(A)(iii)(I).

Once detained under expedited removal, if the noncitizen indicates an intention to apply for asylum and the asylum officer finds the fear to return to be credible, the applicant's claim will be fully considered in a standard removal hearing. *Thuraissigiam*, 591 U.S. 103, 110 (2020).

### B. 2025 Designation for Expedited Removal

The Attorney General has delegated the office's expedited removal designation power to the DHS Secretary. Before January 2025, DHS had only designated noncitizens as eligible for expedited removal if they were identified as "arriving," had arrived by sea

within the last two years, or had been apprehended within 14 days of entry and 100 miles of the border. *See* Notice Designating Aliens Subject to Expedited Removal Under Section 235(b)(1)(A)(iii) of the Immigration and Nationality Act, 67 Fed. Reg. 68924, 68924 (Nov. 13, 2002); Designating Aliens For Expedited Removal, 69 Fed. Reg. 48877, 48879 (Aug. 11, 2004). In January 2025, DHS published the 2025 Designation, authorizing expedited removal to be exercised to the "full scope of its statutory authority." Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139, 8139 (Jan. 24, 2025). DHS has stated that this full scope applies to noncitizens "who are encountered anywhere in the United States more than 100 air miles from a U.S. international land border, and who have been continuously present in the United States for at least 14 days but for less than two years." *Id*.

In its implementation of the 2025 Designation, "the Government began targeting for expedited removal people already in section 240 removal proceedings, many of whom are pursuing asylum and other collateral relief" and executing "courthouse arrests." *Make the Rd. New York v. Noem*, No. 25-CV-190 (JMC), 2025 WL 2494908, at *5 (D.D.C. Aug. 29, 2025). The DHS' typical procedure for these courthouse arrests consist of "moving orally (without any advance notice) to dismiss the individual's pending section 240 proceedings, then arresting the individual at the courthouse immediately upon the dismissal of their section 240 proceedings, and then, finally, placing the individual in expedited removal proceedings through which they can be deported far more quickly, and with far less process, than they would have been in the section 240 proceedings." *Id*.

**III.   DISCUSSION**

    **A. Jurisdiction**

Petitioner invokes this Court's jurisdiction under the habeas provision, 28 U.S.C. § 2241, the Suspension Clause, and federal question, 28 U.S.C. § 1331. Respondents maintain that this Court lacks jurisdiction over Petitioner's claims, stating that (1) the

petition brings improper habeas claims and (2) the claims and relief are barred under § 1252(b)(9) and § 1252(g).

### i. Habeas Corpus Claim

Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to any petitioner who demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Rasul v. Bush*, 542 U.S. 466, 473 (2004). As explained by the Supreme Court, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and...the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Pinson v. Carvajal*, 69 F.4th 1059, 1067 (9th Cir. 2023) (habeas actions limited to challenges of the legality or duration of confinement).

A prisoner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009).

Here, Respondent argues that the petition should be denied because Petitioner is challenging the decision to dismiss his prior 240 proceedings and his placement into expedited removal. Ret. at 2-3. Essentially, Respondent believes that "a review of [Petitioner's] claims would not automatically entitle Petitioner to release from detention" because the claims are not based on the legality of Petitioner's custody. *Id.* at 3.

However, this petition is challenging the lawfulness of Petitioner's detention and requesting his release under 28 U.S.C. § 2241. *See* ECF No. 1 ¶¶ 45-46. The Petitioner, here, is utilizing the APA and the Fifth Amendment's Due Process Clause in his petition to challenge the lawfulness of his detention. Thus, the Petitioner's habeas claims do arise under § 2241 and are properly brought.

/ / /

/ / /

### ii. Immigration and Nationality Act ("INA") Jurisdictional Bars

The government argues that this Court lacks subject-matter jurisdiction over Petitioner's claims because the claims stem from DHS's decision to arrest and detain Petitioner pending removal proceedings. Ret. at 3-5. Respondents maintain that jurisdiction would, thus, be barred under 8 U.S.C. §§ 1252(g), 1252(b)(9). *Id.*

### 1. Section 1252(g) – Decisions by Attorney General

8 U.S.C. § 1252(g) states that, with limited exceptions, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to *commence* proceedings, *adjudicate* cases, or *execute* removal orders against any alien." 8 U.S.C. § 1252(g) (emphasis added); *Reno v. Am.-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 482 (1999). In that light, § 1252(g) is a narrow statutory provision that concentrates on those three discrete actions. *Reno*, 525 U.S. at 482.

Respondents argue that the § 1252(g) bar applies because Petitioner's claims arise "from the decision or action by the Attorney General to commence proceedings [and] adjudicate cases." 8 U.S.C. § 1252(g). Specifically, in Respondent's view, "an IJ's decision to grant a motion to terminate and DHS's decision to commence proceedings, falls squarely within the discrete act[s] barred under § 1252(g)." Ret. at 4. However, Petitioner does not challenge the decision to dismiss and commence proceedings. Instead, Petitioner challenges the legality of the revocation of parole in violation of the law and dismissal of ongoing removal proceedings without due process. Pet. ¶¶ 61, 70, 73, 78, 84. First, the immigration judge had not decided on the motion to dismiss at the time of Petitioner's detainment and, instead, had ordered further process from Petitioner. Second, even assuming that the revocation of parole constitutes a decision or action to adjudicate cases, they are not protected under § 1252(g). That is because agency action is not "specified … to be in the discretion" of the official where the action "was not performed

in accordance with the mandatory … procedures." *Sharkey v. Quarantillo*, 541 F. 3d 75, 86 (2d Cir. 2008).

In this case, revocation of parole did not follow mandatory procedures. Under regulation, parole must be terminated upon written notice after an individualized determination that the purposes no longer apply. 8 C.F.R. § 212.5(e)(2)(i). Here, no explanation or notice was provided for terminating Petitioner's parole. There is also no suggestion that the purpose for which parole was granted had been accomplished. Because these procedures are mandatory and were not followed, the decision to revoke parole and to dismiss the 240 removal proceedings was not a lawful exercise of discretion.

Further, a decision to detain Petitioner does not fall within the three discrete actions identified in § 1252(g) and, thus, would not deprive the Court's jurisdiction. *See, e.g.*, *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 704 (D. Minn. 2025) (finding a claim against detention did not fall under Section 1252(g)); *Mahdawi v. Trump*, 781 F. Supp. 3d 214, 224-26 (D. Vt. 2025) (same); *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 901 (D. Minn. 2020) ("Although the court may not review discretionary decisions made by immigration authorities, it may review immigration-related detentions to determine if they comport with the demands of the Constitution.").

## 2.  Section 1252(b)(9) – Zipper Clause

Section 1252(b)(9) states that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order." 8 U.S.C. § 1252(b)(9). Section 1252(b)(9) is seen as a general jurisdictional limitation that channels judicial review of immigration actions and decisions and acts as a zipper clause. *Reno v. Am.-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 483 (1999). "However, what it 'zips' are requests for review of various kinds of agency action which are heard by means

of petitions for 'judicial review'…[i]t does not affect petitions for habeas corpus." *Flores-Miramontes v. I.N.S.*, 212 F.3d 1133 (9th Cir. 2000).

Respondents argue that Petitioner's detention arises from DHS's decision to terminate previous proceedings and commence new proceedings against him, which would divest this Court of jurisdiction. Ret. at 5. However, § 1252(b)(9) cannot be stretched to preclude jurisdiction for this petition because "[i]nterpreting 'arising from' in this extreme way would also make claims of prolonged detention effectively unreviewable." *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (finding cramming judicial review of detention questions into the review of final removal orders would be absurd). Adopting Respondent's application of § 1252(b)(9) would permit an excessive detention to take place by the time a final order of removal was eventually entered. *Id*. As such, § 1252(b)(9) does not present a jurisdictional bar to the instant petition.

### 3. Section 1252 Generally

The Respondent's jurisdictional arguments on Section 1252 also fail when considered in the broader context of the statutory provisions. Specifically, the jurisdiction-stripping provisions of 8 U.S.C. § 1252 apply over *final* orders of removal. *See* 8 U.S.C. § 1252(b)(9); *Singh v. Gonzales*, 499 F.3d 969, 977 (9th Cir. 2007) ("[T]he entire section is focused on orders of removal."); *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006) ("By its terms, the jurisdiction-stripping provision does not apply to federal habeas corpus petitions that do not involve final orders of removal."). Where a petitioner "does not challenge any final order of removal, but challenges his *detention* prior to the issuance of any such order" the jurisdiction-stripping provisions do not apply. *Flores-Torres v. Mukasey*, 548 F.3d 708, 711 (9th Cir. 2008). Thus, given Petitioner is challenging his detention prior to the issuance of any final order, this Court retains jurisdiction.

/ / /

/ / /

### 4. Suspension Clause

To avoid the INA jurisdiction stripping bar, Petitioner offers the Suspension Clause as an alternative basis to entertain his petition. Pet. ¶ 12. Under the Suspension Clause, "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. Art. I ¶ 9, cl. 2. In determining the reach of the Suspension Clause, the Court is required to consider "(1) the citizenship and status of the detainee and the adequacy of the process through which that status determination was made; (2) the nature of the sites where apprehension and then detention took place; and (3) the practical obstacles inherent in resolving the prisoner's entitlement to the writ." *Boumediene v. Bush*, 553 U.S. 723, 766 (2008).

For the first factor, although Petitioner is not a citizen, he was paroled into the United States upon a finding that he was not a flight risk or a danger to the community. Pet., Ex. A. He has remained here for more than a year and in that time has developed ties to the community. If Section 1252 were to deprive the Court of jurisdiction to review Petitioner's detention, Petitioner would have no ability to challenge his detention and has no right to challenge Respondents' decision to terminate his parole. Additionally, Petitioner was apprehended and detained within the United States. Finally, Respondents have not presented any credible arguments that any practical obstacles prevent Petitioner from entitlement to the writ of habeas. There is no evidence that Petitioner is a danger to the community or a flight risk—in fact, Respondents decided to parole Petitioner when he arrived without ties to the community after determining that he did not have any criminal history. It also appears that Petitioner has complied with the law during his time in the United States. Thus, even if Section 1252 precluded the Court from reviewing Respondents' decision to terminate Petitioner's parole and detain him, the Court would have jurisdiction to review this decision under the Suspension Clause. *Y-Z-L-H v. Bostock*, No. 3:25-CV-965-SI, 2025 WL 1898025, at *10 (D. Or. July 9, 2025).

### B. Petitioner's Arrest and Detention

Petitioner claims his detention following the Respondents' oral motion to dismiss his 240 removal proceedings violates the Fifth Amendment Due Process Clause and the Administrative Procedure Act. Pet. ¶¶ 61, 69, 73, 78, 84. Respondents have conceded that "Petitioner is detained under 8 U.S.C. § 1226(a) and is entitled to an order from this Court directing a bond hearing be held pursuant to 8 U.S.C. § 1226(a)." Ret. at 2. At the same time, Respondents "reserve the right to supplement this response in the event of a stay of enforcement of the *Bautista* final judgment, appellate relief, or a change in DHS policy." *Id*.

Beyond the fact that a bond hearing is not at issue here and Respondents have conceded on that claim, the Court will conduct a full analysis of the issues given Respondents' reservation.

### i. Fifth Amendment Due Process

### 1. Entitlement to Due Process Rights

The Fifth Amendment guarantees that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Though noncitizens do not enjoy constitutional protections outside our borders, once a noncitizen "enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Under this wide umbrella, "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).

Here, Petitioner has "passed through our gates" and "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). Because

Petitioner has developed an interest in remaining during his time here, "the procedures used to remove [him] must adequately protect" that interest. *Make the Rd. New York v. Noem*, No. 25-CV-190 (JMC), 2025 WL 2494908, at *10 (D.D.C. Aug. 29, 2025).

This instant case stands in contrast to *Thuraissigiam*. There, the respondent was a noncitizen detained close to the border and shortly after unlawful entry, and keeping those characteristics in mind, the Supreme Court held that those "in *respondent*'s position ha[ve] only those rights regarding admission that Congress has provided by statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (emphasis added). This holding only reinforced the precedent that noncitizens "on the threshold of initial entry stand[ ] on a different footing" than those who have "passed through our gates." *Mezei*, 345 U.S. 212.

In this case, Petitioner is not an "arriving" noncitizen but one that has present in our country for over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal. *See Yamataya v. Fisher,* 189 U.S. 86, 87 (1903) (finding a noncitizen was entitled to due process before removal despite having spent only four days in the US).

### 2. Government's Adherence to Due Process

Generally, due process protections depend on the situation and must account for (1) the private interest at issue, (2) the risk of erroneous deprivation of that interest through the procedures used, and (3) the Government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). Here, Petitioner alleges that he was detained while his removal proceedings were pending without any opportunity to be heard prior to being arrested and detained. Pet. ¶¶ 45, 46. Also, Petitioner asserts he was subject to the implementation of DHS' 2025 Designation, which violated due process. Pet. ¶ 73. Specifically, he claims that he "was not advised by DHS that they sought to terminate his proceedings in order to place him in expedited removal, depriving him of the bundle of rights associated with his

pending asylum application" and was retroactively and unlawfully subjected to expedited removal under the 2025 Designation. *Id*. ¶ 62, 73.

First, Petitioner has a private interest in remaining free, which developed over the year he resided in the United States. *See Morrissey v. Brewer,* 408 U.S. 471, 482-483 (1972); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). This liberty interest applies to Petitioner, even in his parole status. For example, *Morrissey*—though analyzing the criminal parole context—found that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a grievous loss on the parolee and often others…[thus it] must be seen within the protection of the [Fifth] Amendment." 408 U.S. at 482.

In the deportation context, detention has minimum due process protections. Generally, detention is seen "as a constitutionally valid aspect of the deportation process," *Demore v. Kim*, 538 U.S. 510, 523 (2003), and the government holds the discretion to detain an immigrant pending removal, 8 U.S.C. § 1226(c). However, that discretion is not unbounded. Detention pending removal proceedings has "two regulatory goals"— ensuring future appearances and preventing danger to the community. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). This logically also extends to the granting of parole and its revocation. *Marczak v. Greene*, 971 F.2d 510, 515 (10th Cir. 1992) ("[I]n each case a district director must determine whether a particular person is likely to flee, and whether that person's continued detention would be in the public interest."); *Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *4 (N.D. Cal. July 24, 2025) ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those

criteria."). These primary goals provide guidance for the floor of due process afforded to noncitizens for detention and parole.

Further, Petitioner has a Fifth Amendment right to due process of law in deportation proceedings. *Reno v. Flores*, 507 U.S. 292, 306 (1993). Here, Petitioner was initially provided due process for his removal proceedings following his arrival on June 2, 2024. Pet. ¶ 41. He was able to enter the country, was apprehended, and was given parole after an interview with a CBP officer who determined he was not a flight risk or a danger to the community. *Id*. He applied for asylum with EOIR in August 2024 and regularly complied with ICE check-ins. *Id*. ¶¶ 43-44. The proceedings have created a protectable expectation of his due process rights in his removal proceedings and the fair procedures this country guarantees. Thus, Petitioner was entitled to due process in his parole revocation. Particularly, he was entitled to both notification of revocation and the reasoning for revocation, if not also an opportunity to be heard and contest the determination.

Second, the procedures used present a substantial risk of erroneous deprivation of those interests and are not outweighed by the Government's interest. In *Make the Rd. New York v. Noem*, which considers the application of the 2025 Designation and courthouse arrests, the court determined that "[b]efore removing someone through expedited removal, the Government must make several threshold determinations: whether the individual has been continually present in the United States for two years; whether they have previously been admitted or paroled; whether they are inadmissible on one of the grounds that make them eligible for expedited removal; whether they have a credible fear of persecution; and whether they are a citizen, lawful permanent resident, refugee, or asylee." No. 25-CV-190 (JMC), 2025 WL 2494908, at *14 (D.D.C. Aug. 29, 2025). Each of these determinations present a substantial risk of error and harm to Petitioner's interests in remaining at liberty. This is especially true in regard to the credible fear interview—where individuals might

not be appropriately referred for the interview or not afforded an effective opportunity to be heard—and the continual presence determination. *Id*. at *15-17.

Respondents have also failed to demonstrate a significant interest in Petitioner's detention. Respondents did not provide Petitioner individualized notice and reasoning prior to his arrest and detention on May 27, 2025 and have presented no legitimate reason for why those decisions were made. Any governmental interest of efficient administration of immigration laws by using courthouse arrests does not outweigh these first two factors. *See id*. at *19. Petitioner does not have a criminal record and has regularly complied with and appeared for ICE check-ins and court hearings. There is no indication that he is a flight risk or presents a danger to the community, which strike at the core, guiding goals for parole, and Respondents have not supplied any additional information to the contrary. "At its foundation, due process prohibits detaining an individual without justification." *Mohammed H. v. Trump*, No. CV 25-1576 (JWB/DTS), 2025 WL 1692739, at *5 (D. Minn. June 17, 2025). Denying Petitioner notice and reasoning on the termination of his 240 removal proceedings, his placement into expedited removal proceedings, and revocation of his parole took away a meaningful opportunity to contest and violated due process. *See Pinchi*, 2025 WL 2084921, at *4; *Y-Z-L-H v. Bostock,* No. 3:25-CV-965-SI, 2025 WL 1898025, at *13-14 (D. Or. July 9, 2025).

Finally, "[t]he Due Process Clause also protects the interests in fair notice and repose that may be compromised by retroactive legislation." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 267 (1994). The Supreme Court has limited retroactivity under the Due Process Clause under its "prohibition against arbitrary and irrational legislation." *United States v. Carlton,* 512 U.S. 26, 30 (1994) (quoting *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 733 (1984)). Abiding to this principle, "administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).

The 2025 Designation's language does not clearly require that it be applied to individuals who entered the United States prior to its effective date. Therefore, executing the Designation over Petitioner who entered the country before the Designation's effective date violated the Due Process Clause.

For those reasons, the Court finds that Petitioner's due process rights have been violated.

### ii. Administrative Procedure Act

Under the APA, an agency action may be set aside if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A). An action is an abuse of discretion if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). For a challenged agency action to be upheld, the agency "must explain the evidence which is available, and must offer a rational connection between the facts found and the choice made." *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983) (internal quotations omitted) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

Petitioner argues Respondents violated APA when they "categorically revoked Petitioner's parole and transferr[ed] him to Otay Mesa Detention Center without consideration of his individualized facts," initiated expedited removal proceedings without lawful authority, and subjected him to expedited removal despite that fact that the proceedings "may not be applied to individuals who were 'paroled' into the United States." Pet. ¶¶ 66, 81, 83.

### 1. Legal Standards under the APA

"Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704; *Norton v. S. Utah Wilderness Alliance,* 542 U.S. 55, 61–62 (2004). Reviewable agency action includes "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). Agency action is deemed final if it (1) "impose[s] an obligation, den[ies] a right or fix[es] some legal relationship as a consummation of the administrative process," *Chicago & S. Air Lines v. Waterman S. S. Corp.*, 333 U.S. 103, 113 (1948), and (2) is an action "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow,'" *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (quoting *Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)).

### 2. Failure to Abide by APA

In general, "[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). Following this, a noncitizen should not be returned to custody unless the purposes of the parole have been served. *Y-Z-L-H v. Bostock,* No. 3:25-CV-965-SI, 2025 WL 1898025, at *12 (D. Or. July 9, 2025). Additionally, under regulation, parole must be terminated upon written notice after an individualized determination that the purposes no longer apply. 8 C.F.R. § 212.5(e)(2)(i); *see, e.g., Bostock,* 2025 WL 1898025, at *13-14 (finding parolee must receive written notice of impending revocation with reasons for revocation); *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("The Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the

imprisonment serves the government's legitimate goals."); *Castellon v. Kaiser*, No. 1:25-CV-00968 JLT EPG, 2025 WL 2373425, at *6 (E.D. Cal. Aug. 14, 2025) (finding a case-by-case analysis is needed to revoke parole); *Garcia v. Andrews*, No. 1:25-CV-01006 JLT SAB, 2025 WL 2420068, at *12 (E.D. Cal. Aug. 21, 2025); *but see Doe v. Noem*, No. 25-1384, 2025 WL 2630395, at *9 (1st Cir. Sept. 12, 2025) (finding an individualized termination of parole is not required). In sum, to meet statutory and regulatory requirements, revocation should only occur when the parole's purpose is served, *and* the noncitizen is provided written notice. *Bostock*, 2025 WL 1898025, at *12-13.

However, neither of the other two conditions were met here. First, Petitioner was not provided any notice as to the termination of his parole. Second, Respondents must provide at minimum some reasoning explaining why the Petitioner would now be considered a flight risk or danger to the community. *See Castellon*, 2025 WL 2373425, at *12; *Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *4 (N.D. Cal. July 24, 2025). Given Respondents have not attempted to justify the revocation for Petitioner, this Court holds the Respondent has acted arbitrarily and capriciously in violation of the APA.

### 3. Initiation of Expedited Removal Proceedings

The application of expedited removal is limited to noncitizens who meet several requirements. One of those requirements cabins initiation of expedited removal to noncitizens who (1) are categorized as "arriving in the United States," or (2) have "not been admitted or paroled into the United States" and cannot affirmatively show they have been "physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(i)–(iii); *see also Coalition for Human Immigrant Rights v. Noem*, No. 25 Civ. 872 (JMC), 2025 WL 2192986, at *30 (D.D.C. Aug. 1, 2025).

Petitioner is no longer an "arriving" noncitizen after having resided here for over a year. Also, though he has not been present in this country for a 2-year period, he *has* been paroled into the United States. Therefore, the Court finds that Petitioner could not be subject to § 1225.

Moreover, Petitioner could not have been subjected to expedited removal proceedings. His original 240 proceedings were not dismissed when he was detained. Pet. ¶ 45. Thus, detaining him under § 1225(b) on May 27 had no legal basis. *See*, *e.g.*, *Javier Tomas Munoz v. Paul Arteta, et. al.,* No. 25 CIV. 6137 (ER), 2025 WL 2630826, at *11 (S.D.N.Y. Sept. 12, 2025).

In sum, Respondents' actions are arbitrary, fail to adhere to the law, and therefore, violate the APA.

## IV.   CONCLUSION

Based on the reasoning above, the Court **GRANTS** the petition for writ of habeas corpus. The parties are **ORDERED** to file a Joint Status Report within 72 hours of this Order's filing, confirming Petitioner's release. Further, in aid of the Court's jurisdiction, which is hereby retained, the Court **ORDERS** pursuant to the All Writs Act, 28 U.S.C. § 1651, that Respondents shall not cause Petitioner to be re-detained during the pendency of her removal proceedings without prior leave of this Court. The Clerk of Court **SHALL** enter judgment in Petitioner's favor and close this case.[1]

**IT IS SO ORDERED.**

Dated:  December 31, 2025

Hon. Gonzalo P. Curiel
United States District Judge

---

[1] In his prayer for relief, Petitioner requests an award of costs and reasonable attorney's fees. Pet. at 23. Petitioner's counsel may submit an appropriate EAJA fee application within 30 days of the issuance of this Order.